**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | Case No. 3:21-cr-69 |
| | : | |
| v. | : | |
| | : | Judge Thomas M. Rose |
| SEAN T. PORTER, | : | |
| | : | |
| Defendant. | : | |

---

**ENTRY AND ORDER DENYING MOTION FOR
COMPASSIONATE RELEASE (DOC. NO. 32)**

---

Before the Court is Defendant Sean T. Porter's ("Porter") Motion for Compassionate Release and/or Motion for Sentence Reduction (the "Motion") (Doc. No. 32). Porter is currently incarcerated at FMC Butner in Butner, North Carolina. (*See* FEDERAL BUREAU OF PRISONS INMATE LOCATOR, https://www.bop.gov/inmateloc (last visited June 29, 2026).) By his present Motion, Porter petitions the Court for immediate compassionate release, or alternatively, a reduction in his term of incarceration pursuant to 18 U.S.C. § 3582(c)(1)(A).  (Doc. No. 32 at PageID 237.)  More specifically, Porter seeks early release by virtue of purportedly extraordinary and compelling reasons—most notably, his recent prostate cancer diagnosis. (*Id*. at PageID 238; Doc. No. 32-1 at PageID 246.) Because Porter has not proffered sufficiently extraordinary or compelling reasons, and because the §3553(a) factors otherwise militate against early release, the Court **DENIES** Porter's Motion (*See generally* Doc. No. 32).

## I.   BACKGROUND

On June 7, 2021, the Government charged Porter by Information with one count of attempted coercion and enticement of a minor in the production of child pornography in violation

1

of 18 U.S.C. § 2422(b), and a second count of committing a felony involving a minor while registered as a sex offender in violation of 18 U.S.C. § 2260A. (Doc. No. 20 at PageID 89–90.) On July 21, 2021, pursuant to a Plea Agreement, Porter pled guilty to both previously mentioned counts. (*See generally* Doc. No. 21-1.) The Statement of Facts attached to Porter's Plea Agreement, signed by Porter and his attorney, outlines the conduct underlying Porter's charges:

> Between or around February 14, 2021 and on or around February 15, 2021, in the Southern District of Ohio, Sean T. Porter, using a facility and means of interstate and foreign commerce, knowingly attempted to persuade, induce, entice, and coerce an individual who had not attained the age of 18 years to engage in sexual activity for which any person can be charged with a criminal offense (that being production of child pornography). Porter committed this offense while being required by Federal or other law to register as a sex offender.

> From approximately October 2020 through January 2021, Porter created seven accounts with the profile names of "Sean" and "Mike" on a smartphone dating application administered by Wildec LLC (a company based in Everett, Washington). During the approximate time period of October 2020 through February 2021, Porter utilized two of his Wildec LLC accounts, as well as text messages made from his Digiland DL1023 tablet, to communicate with an FBI Undercover Officer utilizing two personas: one posing as a 14-year-old female child, and another posing as a 13-year-old female child. During these communications, Porter made a number of requests for the Undercover Officer to send him nude images and/or images of her vagina. Porter also sent images of him exposing his nude genitalia to the Undercover Officer on a number of occasions.

> By way of example, on or around February 14, 2021, Porter sent the FBI Undercover Officer (who was posing as a 13-year-old female child) a close-up image of his nude penis. Porter then stated the following: "would you like to have that[?]" . . . I would love to go down and lick you", "I'll bet you taste so sweet" . . . "I know you would love it" . . . "any chance I can see a picture of it[?]" The Undercover Officer respond[ed] by asking the following: "pic of what?" Porter responded with the following: "I've been told that I lick p**** better than a lesbian", "a pic of your vagina." When the Undercover Officer responded that she did not "have any pics like that on [her] phone," Porter replied: "can't you take a picture[?]" Shortly thereafter, Porter sent the Undercover Officer a video depicting him masturbating.

> In addition to communicating with the Undercover Officer, Porter utilized four of his Wildec LLC accounts to communicate with at least approximately 52 other Wildec LLC users who specifically identified themselves by their ages as being minors. Porter solicited nude images from some of these suspected minors, and

received sexually explicit images from at least approximately 26 of the suspected minors. Porter discussed his sexual interest in children with some of these suspected minors, and he discussed sexually explicit conduct he wanted to engage in with them.

By way of example, on or around February 7, 2021, Porter communicated via one of his Wildec LLC accounts with another user who identified herself as being an 11-year-old female child. During their communications, Porter stated the following to this other user: "have you ever rubbed yourself down there[?]", "can I see a picture of you[?]" The other user responded: "Down where[?]" Porter replied: "your vagina."

Porter also utilized his Wildec LLC accounts to discuss the sexual exploitation of children and his sexual fantasies involving children with other apparent adult offenders. In addition to the images he received from the suspected minors, Porter received approximately six images depicting child pornography from other users and distributed approximately six images of child pornography to other users. By way of example, two of these files are described as follows:

1.  File ID 163464201: The file is an image that depicts what appears to be a nude pre-pubescent white female child who is sitting with her legs spread apart. The child is inserting her fingers into her vagina. Porter received this image from another user on or around November 27, 2020. After receiving the image, Porter stated the following: "Yeah", "and she looks cute[.] I wouldn't mind licking that p****."

2.  File ID 166044590: The file is an image that depicts what appears to be a nude pre-pubescent white female child who is kneeling on a bed, exposing her nude vagina and anus to the camera. What appears to be an adult white female is licking the child's anus. Porter sent this image to another user on or around February 7, 2021.

Porter utilized his Digiland DL1023 tablet to access his Wildec LLC accounts, to communicate with the Undercover Officer and other minors, and to possess child pornography files.

All of the communications detailed above transpired while Porter was located in the Southern District of Ohio. The Digiland DL1023 that porter utilized for the communications was manufactured outside the state of Ohio. Accessing Wildec LLC accounts requires use of the Internet and thereby affects interstate and foreign commerce.

At the times that Porter committed the offenses described above, he was required to register as a sex offender under Federal or other law. This requirement was the

3

result of, among other things, his conviction in case number 3:08-CR-163 of one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B).

(Doc. No. 21-1 at PageID 270–72.)

Prior to sentencing, the Probation Office prepared a Presentence Report ("PSR") for Porter (Doc. No. 27). In accordance with the United States Sentencing Guidelines ("U.S.S.G."), the PSR provided a detailed account of Porter's criminal history for consideration at sentencing. (*Id*. at PageID 170–82.) According to the PSR, the Probation Office calculated an offense level of 27 and a criminal history score of 9, putting Porter in a criminal history category of IV. (*Id*. at PageID 165, 182.) Pursuant to that calculation, the Probation Office assessed a range of 120 to 125 months of incarceration for Count 1 and a minimum of 120 months for Count 2, to run consecutively to any term imposed for Count 1. (*Id*.) The Court subsequently adopted the PSR's findings. (Doc. No. 30 at PageID 206.)

At Porter's sentencing hearing on October 21, 2021, the Court imposed the following sentence: a term of incarceration of 120 months for Count 1 and a term of 120 months for Count 2, to run consecutively for a total aggregate sentence of 240 months; a life term of supervised release for Count 1 and a 3-year term of supervised release for Count 2, to run concurrently with Count 1; as well as a $200 assessment. (Doc. No. 29 at PageID 200–01, 204.) Porter is currently 63 years old and has an anticipated release date of April 30, 2038. (*See* FEDERAL BUREAU OF PRISONS INMATE LOCATOR, https://www.bop.gov/inmateloc (last visited June 29, 2026).)

On April 6, 2026, Porter filed the instant Motion, seeking immediate compassionate release, or alternatively, a reduction in his sentence. (Doc. No. 32.) The Government did not file a response, and the time to do so has lapsed. Consequently, this matter is ripe for disposition.

## II.  <u>ANALYSIS</u>

Porter seeks compassionate release, or alternatively, sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (*See id*. at PageID 238–39.) That provision provides, in pertinent part, as follows:

> (c) The court may not modify a term of imprisonment once it has been imposed except that—
>> (1) in any case—
>>> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier,[1] may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3353(a) to the extent that they are applicable, if it finds that—
>>>> (i) *extraordinary and compelling reasons warrant such a reduction*;
>>> . . . .
>>
>> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

§ 3582(c)(1)(A)(i) (emphasis added).

Porter's purported "extraordinary and compelling reasons" justifying his requested relief include his recent prostate cancer diagnosis and his age.[2] (Doc. No. 32 at PageID 238.) By way of

---

[1] On February 5, 2026, Porter requested that the Bureau of Prisons ("BOP") move for compassionate release on his behalf. (Doc. No. 32-1 at PageID 243.) On February 9, 2026, the BOP Warden denied Porter's request, opining that "a reduction in sentence would minimize the severity of [his] offense." (*Id*. at PageID 244.) Porter appealed the BOP's denial on February 18, 2026. (*Id*. at PageID 245.) Although Porter failed to attach the outcome of his appeal to his Motion, the Court assumes Porter's appeal was denied, and he therefore exhausted his administrative rights to appeal, for the sake of comprehensiveness.

[2] Section 3582(c)(1)(A)(ii) provides for the release of a defendant who is "at least 70 years of age, has served at least 30 years in prison, . . . and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community . . . ." Dangerousness aside, as of the date of this Order, Porter is 63 years old, and factoring in his previous terms as well as his current term of incarceration, Porter has been incarcerated for approximately 15 and a half years. (*See* Doc. No. 27 at PageID 154, 170–81.) Thus, Porter does not qualify for age-related release, and the Court does not reach that issue.

support, Porter provided medical records verifying he has indeed been diagnosed with prostate cancer. (*See* Doc. No. 32-1 at PageID 246–53.) As further justification for release, Porter avers, originally, "medical personnel [] delayed [his] treatment[,]" but now he "is designated to a facility to receive treatment for his cancer." (Doc. No. 32 at PageID 240.) Nevertheless, it is Porter's contention that even though he is now receiving the treatment he needs, the matter is "not a moot point" because "[t]he harm has been done"—presumably, the harm inflicted by the alleged delay in his treatment. (*Id*.) According to Porter, his cancer diagnosis, coupled with the delay, constitutes an extraordinary and compelling reason justifying his early release.[3] (*Id*. at PageID 240–41.)

"[S]entence-modification decisions pursuant to § 3582(c)(1)(A) embody a three-step inquiry." *United States v. Jones*, 980 F.3d 1098, 1101 (6th Cir. 2020). First, courts must find that "extraordinary and compelling reasons" warrant sentence reduction; second, courts must look to whether "reduction is consistent with applicable policy statements issued by the Sentencing Commission[;]" and finally, courts must consider "all relevant factors listed in 18 U.S.C. § 3553(a)." *Id*. (internal citations and quotation marks omitted). The policy statement pertaining to motions for compassionate release pursuant to § 3582(c)(1)(A) is § 1B1.13. *See* U.S.S.G. § 1B1.13. Although, in *Jones*, the Sixth Circuit held that district courts need not consider the policy statements in cases where prisoners, as opposed to the BOP, file motions for compassionate release, the Sentencing Guidelines have since been amended in 2023, mandating that courts look to § 1B1.13 at the second step. *Compare Jones*, 980 F.3d at 1108 ("§ 1B1.13 does

---

[3] In a letter addressed to the Court and attached to his Motion, Porter pays lip service to his sister's declining health as an additional basis for sentence reduction. (*See* Doc. No. 32-1 at PageID 259–60.) Porter indicates that his brother takes care of his sister "as much as he can but [Porter] feel[s] like [his brother] lacks the ability to help [his] sister to talk to the doctors and come up with a definitive plan to cope with her heart issues[.]" (*Id*. at PageID 260.) However, the record does not indicate Porter has ever been involved with his sister's care. In fact, the PSR suggests Porter's brother and sister both currently reside in Florida, and although Porter lived in Florida for 6 months when he was 21 years old, he has resided in Kettering, Ohio for the majority of his life and ever since he turned 23 years old. (Doc. No. 27 at PageID 183.) Thus, as they impact Porter's petition for release, Porter's sister's health issues do not tip the scales in his favor.

not 'apply' to cases where an imprisoned person files a motion for compassionate release."), *with United States v. Collins*, No. 1:20-CR-073, 2025 WL 1642682, at *2 n.1 (S.D. Ohio June 10, 2025) ("[T]he Sentencing Commission amended U.S.S.G. § 1B1.13 effective November 1, 2023 and made clear that the policy statement applies to motions filed by inmates."). The Court therefore addresses the three steps sequentially—(1) whether extraordinary and compelling reasons warrant sentence reduction, (2) whether  reduction is consistent with U.S.S.G. § 1B1.13, and (3) whether the § 3553(a) factors weigh in favor of reduction.

### A. Extraordinary and Compelling Reasons

A district court has broad discretion in granting and denying motions for compassionate release which are sought based on extraordinary and compelling reasons. *See Jones*, 980 F.3d at 1106 ("Congress's use of 'may' in § 3582(c)(1)(A) dictates that the compassionate release decision is discretionary, not mandatory."). Although there is no black letter definition for an "extraordinary and compelling reason," the Sixth Circuit has recognized such a reason "is one that is unusual, rare, and forceful." *United States v. McCall*, 56 F.4th 1048, 1055 (6th Cir. 2022) (en banc), *cert. denied*, 143 S. Ct. 2506 (2023); *see also Rutherford v. United States*, 146 S. Ct. 1320, 1331 (2026) ("'[E]xtraordinary and compelling' reasons for compassionate release are those that are especially unusual and convincing."). The defendant ultimately bears the burden of demonstrating that extraordinary and compelling reasons justify sentence reduction. *See United States v. Neidik*, No. 2:23-CR-00217, 2026 WL 775560, at *2 (S.D. Ohio Mar. 19, 2026).

"As a general matter, 'prostate cancer is not an unusual medical condition in the prison population, and the [Bureau of Prisons] is equipped to treat it and to arrange surgery when required.'" *Neidik*, 2026 WL 775560, at *3 (quoting *United States v. Lewis*, No. 00-CR-1118, 2023 WL 4054508, at *2 (S.D.N.Y. June 16, 2023)). In fact, "[c]ourts routinely reject a prostate cancer

diagnosis alone as insufficient to justify compassionate release." *Id*. (citing *United States v. Saccoccia*, 10 F.4th 1, 6 n.5 (1st Cir. 2021)). "To be faithful to the statutory language requiring 'extraordinary and compelling reasons,' it is not enough that the Defendant suffers from . . . chronic conditions that [he] is not expected to recover from. Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." *United States v. Coffer*, No. 1:19-CR-0282, 2024 WL 4664692, at *6 (N.D. Ohio Nov. 4, 2024) (alteration in original) (quoting *United States v. Alvarez*, No. 3:18-CR-158-SI-01, 2020 WL 3047372, at *5 (D. Or. June 8, 2020)); *see also United States v. Terpening*, No. 5:18-CR-00007-TBR, 2020 WL 5824034, at *4 (W.D. Ky. Sept. 30, 2020) ("Because Tarpening's conditions are being managed appropriately, he is not entitled to compassionate release.").

Here, Porter's medical records indicate he suffers from grade group 2 prostate cancer. (*See* Doc. No. 32-1 at PageID 248, 250.) To the Court's understanding, oncologists categorize the severity of patients' prostate cancer with a metric called the Gleason scale. *See* PROSTATE CANCER FOUNDATION, *Gleason Score and Grade Group* (December 2023), https://www.pcf.org/patient-support/diagnosis/gleason-score/. According to his medical records, Porter's Gleason score is 3 + 4 = 7, indicating the severity of Porter's cancer is intermediate. (*See id*.; *see also* Doc. No. 32-1 at PageID 250.) During various visits with his treating physician, Porter advised he experienced no pain as a result of his condition but rather only occasional difficulties with urinating. (Doc. No. 32-1 at PageID 248, 250.) Although Porter was not deemed to be a surgical candidate due to the cancer's "involvement with the urethral sphincter[,]" Porter's records suggest his physician intends to "continue working with [Porter] . . . and [the] prison to coordinate care." (*Id*. at PageID 247.) Porter also suffers from diabetes, for which he has been prescribed a host of medications. (*Id*. at PageID 248.)

Although the Court in no way intends to minimize the severity of Porter's diagnosis, it struggles to see how Porter's condition is any more "unusual, rare, or forceful" than the conditions of a myriad of other similarly situated defendants who were denied compassionate release. *See, e.g., United States v. Cook*, No. 22-3060, 2022 WL 18461862, at *1–2 (6th Cir. Dec. 20, 2022) (affirming the district court's denial of sentence reduction to a 73-year-old man with diabetes and prostate cancer); *United States v. Cabbil*, No. 3:10-CR-106-CRS, 2023 WL 5672844, at *6 (W.D. Ky. Sept. 1, 2023) (denying compassionate release to a 77-year-old man who suffered from prostate cancer and various other chronic ailments because the "treatment [he] [] receiv[ed] appear[ed] to be controlling and stabilizing his medical conditions"); *United States v. Johnson*, No. CR 7:17-1-KKC, 2021 WL 533510, at *2 (E.D. Ky. Feb. 12, 2021) (denying early release to a prostate cancer patient whose "medical conditions have been treated and [were] being monitored"); *United States v. Tolbert*, No. 3:08-CR-142-CRS, 2021 WL 3232421, at *8 (W.D. Ky. July 29, 2021) (denying early release to a 62-year-old defendant with type 2 diabetes, kidney disease, and elevated PSA levels, which put him at high risk for developing prostate cancer); *United States v. Colbert*, No. 99-80399, 2020 WL 3529533, at *2 (E.D. Mich. June 30, 2020) (denying compassionate release to a defendant whose prostate cancer and hypertension were being adequately treated in prison). Furthermore, Porter, himself admits he has been "designated to a facility to receive treatment for his cancer." (Doc. No. 32 at PageID 240; *see also* Doc. No. 32-1 at PageID 255 (depicting correspondence wherein Porter admits that he has had "a definitive treatment plan" since he saw Dr. Michael Beat ("Dr. Beat") of Carle Health Methodist Radiation Oncology, where Dr. Beat "recommended 6 to 12 months of neoadjuvant hormonal therapy then reassessment with repeat PET scan and radiation treatment").) In short, Porter's diagnosis, without more, is insufficiently extraordinary or compelling to justify release.

The Court next turns to Porter's argument that his delay in treatment is irreparable harm done and therefore justifies his early release. (*See* Doc. No. 32 at PageID 240.) As means of support, Porter attached various correspondence letters he sent to BOP staff wherein he urged them to "take [his] cancer care more seriously!" (Doc. No. 32-1 at PageID 255–57.) As an initial matter, the Court notes that if Porter intends to contest the adequacy of his treatment, a motion for compassionate release is not the proper vehicle to make such a challenge:

> Normally, a court considering a motion for compassionate release on the basis that a prisoner is receiving inadequate medical care should deny such a motion. This is so because where an institution fails to provide adequate medical care . . . the proper avenue for relief is the route the Supreme Court laid out in *Estelle v. Gamble*, 429 U.S. 97 (1976).

*United States v. Rodriguez-Gonzales*, No. 3:08-CR-304-4, 2021 WL 5769160, at *3 (N.D. Ohio Nov. 3, 2021).

Even if this were the appropriate procedural vehicle for making such a challenge, Porter's medical records stand in direct contradiction to his contentions and correspondence letters. Porter first exhibited signs of potential prostate cancer on January 21, 2025, when his treating physicians conducted a blood test and noticed he had an elevated PSA level. (Doc. No. 32-1 at PageID 250.) Thereafter, Porter was referred to a urologist, who discovered a 2–3 cm prostate nodule during a rectal exam. (*Id*.) On March 25, 2025, Porter had an MRI, which revealed a mass on his prostate gland. (*Id*.) On May 28, 2025, Porter underwent "[t]ransrectal ultrasound-guided prostate biopsies[,]" which led to a "diagnosis of prostatic adenocarcinoma, grade group 2, Gleason score 3 + 4 = 7 diffusely involving all of the prostate samples." (*Id*.) Following his biopsy, Porter was scheduled for a PSMA PET scan, set for June 4, 2025. (*Id*.) Dr. Kimberly Ku ("Dr. Ku") performed a general physical exam on Porter on June 30, 2025, where she refilled Porter's various diabetes medications and noted he experienced no pain on that date. (*Id*. at PageID 248.) During the same

evaluation, Porter and Dr. Ku discussed that, although Porter was not a surgical candidate, Dr. Ku would continue to "work[] with [Porter]. . . and [the] prison to coordinate [his] care." (*Id.* at PageID 247.) Then, on July 7, 2025, Porter met with Dr. Beat, a urologist with Carle Health Methodist Radiation Oncology, where the two discussed Porter's biopsy results, and Dr. Beat noted that, once again, Porter indicated he was "not experiencing pain at [that] time." (*Id.* at PageID 250.) Porter's only complaint during that visit was his need to return to the bathroom repeatedly after voiding his bladder. (*Id.*) Finally, although Porter failed to include any medical records following his July 7, 2025 visit, his correspondence letters with BOP staff indicate Dr. Beat devised a treatment plan, including hormonal therapy and radiation treatment. (*See id.* at PageID 255.) The letters further indicate Porter met with an oncologist, at the very least, on October 15, 2025, as well as February 23, 2026. (*Id.* at PageID 256–57.)

That said, Porter certainly may have expressed frustrations in his correspondence letters with BOP staff and may have qualms with the expediency of his treatment plan, but all unjustifiably so. Put differently, contrary to his unfounded contentions, Porter's medical records exhibit his doctors' diligent efforts—and presumably, the BOP's coordination and assistance—in treating his prostate cancer. *See Cabbil*, 2023 WL 5672844, at *6 (denying relief where, "contrary to Cabbil's assertions, his prostate cancer was very promptly and intensively investigated and evaluated"). And even if Porter's assertions were substantiated (they are not), "a delay in care or the need for a lengthy course of treatment is not the same thing as not receiving care at all." *United States v. Mays*, No. 5:14-CR-300, 2025 WL 2918203, at *3 (N.D. Ohio Oct. 15, 2025). Nevertheless, assuming Porter's prostate cancer diagnosis or the so-called delay in his treatment qualify as extraordinary and compelling reasons to reduce his sentence, both the § 1B1.13 policy statement and the § 3553(a) factors unquestionably caution against his early release.

11

### B. Policy Statement § 1B1.13

In addition to Porter's questionably extraordinary and compelling justifications for early release, the Court believes § 1B1.13's guidance weighs against Porter's requested relief:

> (b) **Extraordinary and Compelling Reasons**.--Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:
> (1) **Medical circumstances of the Defendant**.--
> . . . .
> (B) The defendant is--
> (i) suffering from a serious physical or medical condition[]
> . . . .
>
> *that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.*

U.S.S.G. § 1B1.13(b)(1)(B)(i) (emphasis added). Based on Porter's medical records, he experiences no pain as a result of his condition, and according to his own admission, the BOP has designated him to a facility for cancer treatment, in accordance with his "definitive treatment plan." (Doc. Nos. 32 at PageID 240; 32-1 at PageID 255.) And although Porter is not a surgical candidate, the Court has no basis upon which to conclude he could not recover from prostate cancer if provided adequate treatment while incarcerated.[4]

### C. § 3353(a) Factors

The Supreme Court has recently articulated the proper analytical sequence in compassionate release cases—courts are first to determine that the petitioner adequately established extraordinary and compelling reasons warranting relief, and only upon such a finding, turn to the § 3553(a) factors. *See Rutherford*, 146 S. Ct. at 1333 ("Before determining the extent

---

[4] Attached to Porter's Motion is some correspondence between Porter and a member of BOP staff, wherein Porter mentions his "chronic uncontrolled disease"—namely, diabetes. (*See* Doc. No. 32-1 at PageID 262.) To the extent Porter seeks early release based on his diabetes, that attempt is not well-taken because Porter's diabetes predates his incarceration, and he continues to receive treatment and take various medications to treat it. (*See id.* at PageID 248; *see also United States v. Hunter*, 12 F.4th 555 (6th Cir. 2021) ("[F]acts that existed when the defendant was sentenced cannot later be construed as 'extraordinary and compelling' justifications for a sentence reduction."), *cert. denied*, 142 S. Ct. 2771 (2022).)

12

of a reduction based on the § 3553(a) factors, a court must first ensure that a movant is part of the limited class of prisoners who are eligible for such reduction. And whether a prisoner is eligible depends on whether he can offer extraordinary and compelling reasons that warrant compassionate release . . . ."). As noted above, while Porter's justifications for release are suspect at best, the Court nevertheless believes the § 3553(a) factors unequivocally caution against early release. *See United States v. Young*, No. 22-2164, 2023 WL 9063673, at *2 (6th Cir. Oct. 4, 2023) (affirming the district court's conclusion that "even if [the defendant] demonstrated extraordinary and compelling reasons for his release, the § 3553(a) factors weighed against it"). Those factors are as follows:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for--
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--
>
> . . . .
>
>> (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);
> (5) any pertinent policy statement--[5]
>
> . . . .
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

---

[5] The Court does not address the fifth factor here because, as delineated above, the applicable policy statement, § 1B1.13, does not favor reduction.

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1)–(7). Although this Circuit does "not require 'a mechanical recitation of the § 3553(a) factors, . . . [a district court] must provide an explanation of why, based on the totality of the circumstances, it chose the sentence that it did.'" *United States v. Turner*, 756 F. App'x 576, 582 (6th Cir. 2018) (alteration in original) (quoting *United States v. Rossi*, 422 F. App'x 425, 437 (6th Cir. 2011)).

Here, all but perhaps one factor weighs against reduction. Once again, the Statement of Facts attached to Porter's Plea Agreement indicates that, in addition to an undercover officer posing as a 13-year-old female, Porter used various Wildec accounts to communicate with at least 52 other users who specifically identified themselves as minors. (Doc. No. 21-1 at PageID 270.) Moreover, Porter solicited images from many of those minors, received sexually explicit images from at least 8 minors, and sent images of his own genitalia to at least 26 suspected minors. (*Id*.) Not to mention, Porter exchanged messages with various minors about his sexual interests and his desire to engage in sexually explicit conduct with them. (*Id*.) Not including Porter's extensive non-minor-related criminal history, Porter's PSR indicates the conduct underlying the present offense is far from out of the ordinary for him. (*See id*. at PageID 175–81.) Porter's criminal history involving minors is replete with charges dating back to 2003, including attempted unlawful sexual conduct with a minor, importuning, and possession of child pornography. (*Id*.)

As for the second factor, attempted coercion and enticement of a minor to engage in sexual activity in violation of 18 U.S.C. § 2422(b) is a very serious offense. *See United States v. Jones*, No. 18-3743, 2019 WL 3764628, at *5 (6th Cir. June 27, 2019) (affirming the sentence imposed by the district court where it characterized the defendant's coercion and enticement of a minor in violation of § 2422(b) as "depraved and evil" and "intentional and purposeful"). It makes no

14

difference that the conduct underlying the present conviction involved Porter communicating with an undercover officer because, under the law, that mere fortuity is inconsequential. *See United States v. Stevenson*, 659 F. App'x 221, 225 (6th Cir. 2016) ("[T]his circuit has made it plain that § 2422(b) requires only that 'the defendant had an intent to persuade or attempt to persuade' a minor to engage in prohibited sexual activity." (quoting *United States v. Bailey*, 228 F.3d 637, 638 (6th Cir. 2000))). As mentioned above, Porter's criminal history paints a disturbing picture of nearly two decades of child abuse and attempted child abuse, from which his previous, shorter sentences evidently deterred him very little. (*See* Doc. No. 21-1 at PageID 175–81.) And contrary to Porter's affirmations, the Court is not confident Porter's age and medical issues will have the deterrent effect or protect the public as much as he purports they will. *See Mays*, 2025 WL 2918203, at *4 ("Even if the Court were inclined to believe that Mays' age and health make him less of a threat to the public—and it does not—this is not the only Section 3553(a) factor the Court must consider."). What's more, Porter seems to have made productive strides towards rehabilitation while incarcerated. In fact, attached to his Motion is a list of classes he has taken while incarcerated, as well as a recommendation letter from one of his business professors, Elizabeth Godinez ("Professor Godinez"). (Doc. No. 21-1 at PageID 251–54.) In her letter, Professor Godinez vouches for Porter's academic progress, behavior, and personal growth, and attests to his efforts towards earning his Business Specialist Certificate. (*Id*. at PageID 254.) The Court is inclined to believe removal from his environment would hinder, if not halt, Porter's progress.

Turning to the third and fourth factors, and according to the probation officer's calculations as delineated in the PSR, Porter was eligible for a mandatory minimum incarceration term of 120 months to 125 months for Count 1 and a mandatory minimum term of 120 months for Count 2, to

run consecutively with Count 1. (Doc. No. 27 at PageID 185–86.) Therefore, at the time of sentencing, Porter was eligible for anywhere between a 240 and 245-month term of incarceration. (*Id*.) And as Porter himself agreed to in his Plea Agreement, the Court sentenced Porter to a 240-month term of incarceration. (*See* Doc. Nos. 21-1 at PageID 264–265; 28 at PageID 198.) That said, Porter received the minimum allowable sentence by statute.

Before addressing the sixth factor, the Court finds it prudent to preface its analysis with a well-settled axiom: "A sentence within the Sentencing Guidelines is presumptively reasonable." *United States v. Nester*, No. 23-1727, 2024 WL 4615777, at *7 (6th Cir. Oct. 30, 2024). And as set forth above, in adopting the term of incarceration delineated in the Plea Agreement, the Court sentenced Porter to the statutory minimum term of incarceration, 240 months. (*See* Doc. Nos. 21-1 at PageID 264–65; 27 at PageID 185–86; 28 at PageID 198.) Even so, this term is not inconsistent with sentences imposed in other cases where defendants with similar histories attempted to coerce and entice minors in violation of § 2422(b). *See United States v. Turner*, 756 F. App'x 576, 578–79 (6th Cir. 2018) (affirming the district court's imposition of a 238-month term of incarceration, after factoring in two months of credit for state time, for a defendant who violated § 2422(b)); *United States v. Mahoney*, 527 F. App'x 467, 472 (6th Cir. 2013) (affirming the district court's sentence for a violation of § 2422(b) where the defendant "was sentenced within—actually at the bottom of—his guideline range . . . ."); *United States v. Sullivan*, No. 2:18-CR-27, 2023 WL 4078005, at *1 (S.D. Ohio June 20, 2023) (denying the defendant's motion for compassionate release after sentencing him to a 138-month term of incarceration for a violation of one count of coercion and enticement of a minor).

Finally, the only factor that may weigh slightly in Porter's favor is the seventh—the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a)(7). According to the

PSR, "[t]here is no victim associated with the counts of conviction because the defendant communicated with an undercover officer. However, pursuant to the Plea Agreement, the defendant agreed to also pay restitution to the victims of any other federal or state offenses, whether charged or uncharged, committed by the defendant . . . that relate[] to child pornography or the sexual abuse or exploitation of children that became known to the government during the course of the investigation of the instant offense." (Doc. No. 27 at PageID 163.) Once again, the fact that Porter communicated with an undercover officer rather than a minor is a mere fortuity, and that fact does not detract from the overwhelming weight of evidence under the other factors which strongly caution against early release.

In sum, while the Court sympathizes with Porter in his recent cancer diagnosis, the law is quite clear: Porter's condition is not, in the most literal sense, a get-out-of-jail-free card. Nor does his diagnosis change the fact that, up until this point, Porter has demonstrated time and time again that he is utterly incredulous in changing the error of his ways. Put plainly, because Porter has failed to demonstrate his circumstances are extraordinary and compelling enough to warrant release, and because the § 3553(a) factors otherwise weigh against reduction, the Court cannot in good conscience find that Porter's particular circumstances justify early release. Accordingly, Porter's Motion for Compassionate Release and/or a Reduction in Sentence is **DENIED** (Doc. No. 32).

### D. <u>Appointment of Counsel</u>

Although Porter did not explicitly move for appointment of counsel, a brief note at the bottom of his Motion requests that counsel be appointed for him. (*See* Doc. No. 32 at PageID 242.) "All federal appellate courts, including the Sixth Circuit, agree that this rule extends to motions for compassionate release: '[T]here is no constitutional (or statutory) right to appointed counsel in

17

§ 3582(c) proceedings.'" *United States v. Murray*, No. 3:20-CR-00021, 2025 WL 3207016, at *1 (S.D. Ohio Nov. 17, 2025) (alteration in original) (quoting *United States v. Manso-Zamora*, 991 F.3d 694, 696 (6th Cir. 2021)). Rather, "[a] district court has discretion, under 18 U.S.C. § 3006A(a)(2), to appoint counsel when 'the interests of justice so require.'" *United States v. Smith*, No. 2:18-CR-00049-JRG-4, 2022 WL 1127116, at *1 (E.D. Tenn. Apr. 15, 2022). "In exercising that discretion, a court should consider several factors, including the nature of the case, whether the issues are legally or factually complex, and the litigant's ability to present the claims for relief to the court." *Id*.

Here, appointment of counsel is not warranted. The facts and law surrounding this case are not so complex so as to require the assistance of counsel. *See United States v. Tragas*, No. 09-20023-10, 2020 WL 5064383, at *8 (E.D. Mich. Aug. 27, 2020) ("A motion for compassionate release does not entail complex issues of law or fact that would prevent Defendant from prevailing without the assistance of an attorney."), *aff'd*, 2021 WL 4205168 (6th Cir. Aug. 4, 2021). Moreover, Porter's Motion did not fail due to lack of representation; instead, the law is simply not on his side. Finally, the Court has no reason to conclude Porter, who has had some college education and has taken dozens of classes while incarcerated, is unable to represent himself in this matter. (*See* Doc. Nos. 27 at PageID 154; 32-1 at PageID 251–53.)

Accordingly, insofar as Porter's Motion seeks appointment of counsel, that request is **DENIED** (*See* Doc. No. 32 at PageID 242).

18

III. **CONCLUSION**

For the reasons stated above, the Court **DENIES** Porter's Motion for Compassionate Release and/or Sentence Reduction (Doc. No. 32). The Court further **DENIES** Porter's request for appointment of counsel. (*See id*. at PageID 242.)

**DONE** and **ORDERED** in Dayton, Ohio, this Wednesday, July 1, 2026.


s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

19